UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NAEGELI REPORTING CORPORATION,                    Civil No. 3:11-1138-HA (lead case)
                                                                      3:11-1145-HA
         Plaintiff,

         v.                                                      OPINION AND ORDER

EDGAR L. PETERSEN and TIFFANY J.
RODERICK,

         Defendants.

_____

HAGGERTY, District Judge:

         Plaintiff filed this action against its former employees asserting contract claims, tort

claims, and violations of the Uniform Trade Secrets Act, ORS 646.461-.475, and the Computer

Fraud and Abuse Act, 18 U.S.C. § 1030. Defendants have asserted counterclaims for declaratory

relief and violations of Oregon's Whistleblower Act, ORS 659A.199.

         Shortly after initiating this action, plaintiff filed a motion seeking preliminary injunctive

relief and expedited discovery.  The parties subsequently agreed to an expedited discovery

1 -- ORDER

schedule, exchanged documents, and took several depositions. Following the completion of the

expedited discovery, this court held oral argument on plaintiff's motion for a preliminary

injunction on November 21 and 22, 2011. The court heard testimony from witnesses, received

exhibits, and then took the matter under advisement. For the following reasons, Plaintiff's

Motion for Preliminary Injunction [4] is DENIED.

## STANDARDS

A party seeking a preliminary injunction must demonstrate (1) that it is likely to succeed

on the merits of such a claim, (2) that it is likely to suffer irreparable harm in the absence of

injunctive relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in

the public interest. *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v.*

*Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). In the Ninth Circuit, a district court may also

issue a preliminary injunction if the party seeking injunctive relief demonstrates "serious

questions going to the merits," the balance of hardships tips strongly in its favor, and the other

two elements of the test are met. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127,

1131-32 (9th Cir. 2011). Injunctive relief is an extraordinary remedy that may only be awarded

upon a clear showing that the party seeking the injunction is entitled to such relief. *Winter*, 555

U.S. at 22.

## BACKGROUND

Plaintiff is an Oregon corporation that provides court reporting and other services to legal

professionals. Plaintiff's clients often contact plaintiff to schedule a court reporter and then

plaintiff contacts one of its independently contracted court reporters to attend the proceeding.

Plaintiff synchronizes the written transcript with the audio or video recording, and provides key-

word indexing, digital scanning, and special formatting to set its transcripts apart from other firms.

Plaintiff maintains a database of client information known as the Act! Sales Database. The Act! Sales Database contains allegedly confidential client and prospective client information, including contact information, details relating to business transactions with clients, sales information, marketing information, employee data, and other information about plaintiff's services. Naegeli Decl. at 5-6.

Defendants were formerly employed by plaintiff in its marketing department. As part of their employment, defendants had access to the Act! Sales Database and other customer information. Defendant Roderick was employed as plaintiff's Marketing Specialist, and Petersen was employed as a Sales Manager. Although Roderick strongly recommended that plaintiff hire Petersen, she never disclosed to plaintiff that Petersen is her father.

Petersen was terminated by plaintiff in May 2011. Roderick, along with Dennis Toomey, Lawrence Zeringer, and Allie Mincks,[1] voluntarily resigned in August 2011. Defendants now work for Esquire Solutions (Esquire), which is another court reporting firm that recently established an office in Portland, Oregon.

Plaintiff alleges that defendants formed a team known as the "Anti-Naegeli Project." As part of the project, defendants allegedly misappropriated plaintiff's confidential and trade secret

---

[1]  Plaintiff has filed separate actions against these former employees as well. Plaintiff's action against Dennis Toomey in this court was recently consolidated with this case. *See Naegeli Reporting Corp. v. Toomey*, Case No. 11-1138-HA. Plaintiff has also filed suit against Lawrence Zeringer in United States District Court for the Eastern District of Washington, *Naegeli Reporting Corp. v. Zeringer*, Case No. 11-3490LRS, and against Allie Mincks in Oregon Circuit Court for Multnomah County, *Naegeli Reporting Corp. v. Mincks*, Case No. 11-09-12442.

3 -- ORDER

information while they were employed by plaintiff, and schemed to start a competing business.

Plaintiff contends that defendants encouraged plaintiff's employees to resign, recruited its

employees and court reporters to join their new business, and raided plaintiff's confidential client

database.

**DISCUSSION**

Plaintiff seeks to enjoin defendants and "anyone acting in concert with them" from:

- retaining, using, disclosing, or misappropriating plaintiff's confidential and trade secret information;

- soliciting plaintiff's customers or employees; and

- from using plaintiff's confidential or trade secret information to encourage plaintiff's customers, employees, or court reporters to terminate their relationship with plaintiff and enter into a relationship with one of plaintiff's competitors.

To obtain the injunctive relief it seeks, plaintiff must demonstrate a likelihood of success

on the merits or serious questions going to the merits, a likelihood of irreparable harm, a balance

of hardships that tips in its favor, and that an injunction serves the public interest.

**1.      Likelihood of Success**

Plaintiff contends that it is likely to succeed on the merits of its claims for breach of

contract, violations of the Uniform Trade Secrets Act, and violations of the Computer Fraud and

Abuse Act.  Defendants respond that: (1) the Non-Solicitation Agreement is unenforceable under

Oregon's statutory and common law, (2) plaintiff's customer lists do not constitute a trade secret,

and (3) since their employment with plaintiff ended, defendants have never improperly used

plaintiff's information to solicit business for Esquire.

4 -- ORDER

A.      **Breach of Contract claim**s

Defendants each executed three contracts upon commencement of their employment with plaintiff: a Non-Solicitation Agreement, a Confidentiality Agreement, and a Non-Competition Agreement.  Plaintiff is only seeking to enforce the first two agreements.

The Non-Solicitation Agreement provides that during defendants' employment with plaintiff and for a period of two years following the termination of their employment, defendants "will not, Directly or Indirectly solicit, divert, or appropriate (or attempt to solicit, divert, or appropriate) . . . any person or entity that was a customer or prospective customer of [plaintiff] during such non-solicitation period." Compl. at Ex. 2, 4.  Similarly, defendants agreed to not "directly or indirectly, solicit, divert, or hire away (or attempt to solicit, divert, or hire away) . . . any independent contractor or employee  [of plaintiff]." *Id.*   The parties disagree as to whether the Non-Solicitation Agreement should be construed as a non-competition agreement, which must comply with Oregon Revised Statute (ORS) 653.295, or merely as a restraint on solicitation, which need only comply with common law.

 After January 1, 2008, any non-competition agreement entered into between an employer and an employee is voidable and may not be enforced by a court of this state unless four requirements are met. ORS 653.295(1).  First, the employer must inform the employee in a "written employment offer received by the employee at least two weeks before the first day of the employee's employment that a noncompetition agreement is required as a condition of employment" or "the agreement is entered into upon a subsequent bona fide advancement of the employee by the employer." *Id.* at 653.295(1)(a).  Second, the employee must be employed as an exempt administrative, executive, or professional employee.  *Id.* at 653.295(1)(b); 653.020(3).

5 -- ORDER

Third, the employee must have access to trade secrets, or competitively sensitive confidential

business or professional information.  *Id.* at 653.295(1)(c).  Fourth, the employee's total annual

gross salary and commissions at the time of the employee's termination must exceed the current

median family income for a four-person family as determined by the U.S. Census Bureau.  *Id.* at

653.295(1)(d).

The parties do not dispute that defendants were given insufficient notice of the

agreements prior to their employment.  Roderick was hired on January 22, 2010, and signed her

agreement that same day without any prior notice.  Petersen executed his agreement on January

14, 2010, only six days before his first day of employment.  Accordingly, the Non-Solicitation

Agreement is unenforceable if it is construed as a non-competition agreement.

Plaintiff argues that the Non-Solicitation Agreement is merely a "covenant not to solicit

employees of the employer or solicit or transact business with customers of the employer."  *See*

ORS 653.295(4).  The Agreement, however, is much broader.[2]

By the terms of the Agreement, defendants may not directly or indirectly solicit, divert, or

appropriate any past, present, or prospective customer of plaintiff for two years following their

termination.  *See* Compl. at Ex. 2, 4.  This language extends beyond a restriction not to solicit or

transact business with plaintiff's customers, but also prevents defendants from engaging in

activities that indirectly divert prospective customers away from plaintiff.  The overall effect of

the Agreement is to prevent defendants from competing with plaintiff.

Moreover, case law interpreting prior versions of ORS 653.295 has consistently held that

an agreement restraining an employee from directly or indirectly soliciting business from former

---

[2] The court declines plaintiff's invitation to rewrite the scope of the Agreement.

clients or prospective clients should be construed as a non-competition agreement. *See Moreland v. World Commc'n Ctr., Inc.,* No. Civ. 09-913-AC, 2010 WL 4237302, at *3-4 (D. Or. Sept. 17, 2010) (holding that an agreement restricting an employee from directly or indirectly soliciting clients or otherwise causing the employer to lose clients was a non-competition agreement even though it was intended as a non-solicitation agreement); *Dymock v. Norwest Safety Protective Equip. for Or. Indus.*, 19 P.3d 934, 937 (Or. Ct. App. 2001), *overruled on other grounds*, 45 P.3d 114 (Or. 2002) (holding that non-competition agreements include covenants that materially deter or impair an employee from engaging in the same business as the employer); *First Allmerica Fin. Life Ins. Co. v. Sumner*, 212 F. Supp. 2d 1235, 1239 (D. Or. 2002) (holding that a contractual provision restraining an employee's ability to solicit former customers and co-workers amounts to a non-competition agreement). Plaintiff has not articulated a persuasive basis for the court to depart from this line of cases.

Alternatively, even if the Non-Solicitation Agreement is simply a restraint on trade, plaintiff has not shown that it is likely to succeed on the merits of this claim. To be enforceable, a restrictive covenant must be (1) partial or restricted in its operation in respect either to time or place; (2) on some good consideration; and (3) must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public. *Nike, Inc. v. McCarthy*, 379 F.3d 576, 584 (9th Cir. 2004) (citation omitted).

Although plaintiff may succeed as to the first two elements, plaintiff has not demonstrated that the Non-Solicitation Agreement is reasonable. Again, the court finds the breadth of the Agreement to be troubling. On its face, the Agreement precludes defendants from

7 -- ORDER

engaging in conduct that even indirectly diverts former or prospective customers from plaintiff.

It does not merely restrict defendants from soliciting clients they had actual contacts with while

employed by plaintiff. *See Konecranes, Inc. v. Sinclair*, 340 F. Supp. 2d 1126, 1131 (D. Or.

2004) ("In deciding whether a non-compete agreement is reasonable, an important consideration

is whether it merely restricts the former employee from luring away specific accounts ( i.e., those

he serviced while employed) or whether it restricts the employee from competing at all.")

Plaintiff has also not met its burden as to the Confidentiality Agreement.  The

Confidentiality Agreement provides that during the "term of this Agreement, and indefinitely

subsequent to the termination of this Agreement for whatever reason, [the employee] shall not,

directly or indirectly, under any circumstances or by any means, disclose or divulge or use for

[the employee's] benefit or for the benefit of any third party, the Confidential Information of the

Company without the express written consent of the President of the Company."  Compl. at Ex.

1, 3.  Further, the employees must return all confidential information or materials that are the

property of the employer upon request or upon termination of employment.  *Id.*  The

Confidentiality Agreement, however, does not prohibit defendants from using information "for

legitimate business purposes within the scope of Employee's employment."  *Id.*

Based on the testimony provided, any allegedly improper downloading or e-mailing may

have been performed for legitimate business purposes.  Defendants testified that their conduct

enabled them to work from home, to compare their client lists with their commission reports to

ensure that they were properly compensated, or to otherwise complete their work for plaintiff.

While it is clear that defendants may have violated the Confidentiality Agreement by retaining

plaintiff's property, injunctive relief is not a proper remedy as it does not appear that there is any

8 -- ORDER

ongoing potential for harm, irreparable or otherwise.  Any alleged harm can be remedied with

damages.  Additionally, after consulting with plaintiff's counsel regarding potential spoliation

issues, defendants have agreed to delete any retained data that is the property of plaintiff.

> **B.**     **Uniform Trade Secrets Act (UTSA) claim**

To establish a claim under the UTSA, plaintiff must demonstrate that: (1) the subject of

the claim qualifies as a statutory trade secret; (2) the plaintiff employed reasonable measures to

maintain the secrecy of its trade secrets; and (3) the conduct of the defendants constitutes

statutory misappropriation." *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1217 (D. Or.

2004).  According to the statute, a trade secret includes:

> information, including a drawing, cost data, customer list, formula, pattern,
> compilation, program, device, method, technique or process that:
>
> > (a) Derives independent economic value, actual or potential, from not
> > being generally known to the public or to other persons who can obtain economic
> > value from its disclosure or use; and
>
> > (b) Is the subject of efforts that are reasonable under the circumstances to
> > maintain its secrecy.

ORS 646.461(4).

"A customer list can sometimes be a trade secret, e.g., when the employer has expended

considerable time and money to pinpoint a narrow segment of the population that is interested in

this product or service." *IKON Office Solutions, Inc. v. Am. Office Products, Inc.*, 178 F. Supp.

2d 1154, 1167 (D. Or. 2001).  This includes nonpublic information about clients that employees

have agreed to keep confidential.  *Dial Temporary Help Servs. v. Shrock*, 946 F. Supp. 847, 854

(D. Or. 1996).  However, a customer list is not considered a trade secret if the information is

publicly available or can be easily identified by a person with rudimentary knowledge of the

9 -- ORDER

industry. *IKON Office Solutions, Inc.*, 178 F. Supp. 2d at 1168 (citing *W. Med. Consultants, Inc. v. Johnson*, 835 F. Supp. 554, 557-58 (D. Or. 1993) (customer information not trade secret if it is commonly known in the industry or readily ascertainable through public sources)).

Here, plaintiff's allegedly secret customer lists consist of contact information for law firms and attorneys who previously scheduled court reporting services with plaintiff. *See* Hunt Decl. Under Seal, Exs. A-C. Presumably, any person familiar with the court reporting industry would know that law firms and attorneys are prospective clients for a court reporting firm. The only information in plaintiff's lists that is not publicly available is the date of plaintiff's last contact with that client and the name of the legal assistant who contacted plaintiff. The court recognizes that the identity of the legal assistants who arrange for court reporters may be valuable to plaintiff and defendants, but is not confident that it is a trade secret. Although plaintiff has taken efforts to keep its Act! Sales Database and customer lists private, plaintiff has not shown that it has expended considerable effort or expense to create its lists, or that it derives independent economic value from the publicly available contact information.

Plaintiff has, however, raised a serious question regarding whether plaintiff's court reporter list should be considered a trade secret. Plaintiff's list of reliable, well-qualified, and recommended court reporters has been honed over several years and is not publicly available. Defendants may have improperly retained this list following the end of their employment with plaintiff, but do not believe that they have the list. In any event, this factor weighs in favor of an injunction.

10 -- ORDER

### C.       Computer Fraud and Abuse Act (CFAA)

An individual is liable under the CFAA if he or she "knowingly and with intent to

defraud, accesses a protected computer without authorization, or exceeds authorized access, and

by means of such conduct furthers the intended fraud and obtains anything of value, unless the

object of the fraud and the thing obtained consists only of the use of the computer and the value

of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

Again, the court finds that plaintiff has not established that it is likely to succeed on this

claim because defendants credibly testified that any computer access was legitimate and part of

defendants' duties while employed by plaintiff.  However, Roderick admits that she sent client

lists to Petersen after he had been terminated, and that defendants continued to e-mail documents

to their personal accounts after being warned to stop that conduct immediately by plaintiff.  Such

evidence raises some questions as to whether defendants exceeded their authority.  This factor

weighs slightly in plaintiff's favor.

### 2.       Irreparable harm

Plaintiff contends that its loss of its confidential client information and loss of business

constitutes irreparable harm.  *See Alexander & Alexander Benefits Servs., Inc. v. Benefit Brokers

& Consultants, Inc.*, 756 F. Supp. 1408, 1414-16 (D. Or. 1991) (finding a probability of success

on the merits and irreparable harm where the defendants admitted taking copies of the employer's

client activity reports and customer files, and the employer would be unable to fairly compete

because of the misappropriation).  At this point, the court finds no irreparable harm.  Defendants

have admittedly returned or will delete any of plaintiff's property that they retained following

their termination of employment.  Defendants testified that they have never used any of those

11 -- ORDER

documents to divert business from plaintiff.    Thus far, plaintiff has presented no evidence that it
will be unable to fairly compete with Esquire or other related businesses because of defendants'
conduct.

The loss of plaintiff's confidential court reporter list could limit plaintiff's inability to
contract with well-qualified court reporters.   This harm, however, can be reasonably quantified
and remedied with damages.   Therefore, this factor weighs against the issuance of an injunction.

**3.      Balance of hardships**

Plaintiff has only demonstrated serious questions going to the merits of its claims, so the
balance of hardships must tip sharply in its favor to obtain an injunction.  *See Alliance For The*
*Wild Rockies*, 632 F.3d at 1131-32.   Plaintiff asserts a legitimate interest in preventing defendants
from disseminating plaintiff's confidential information and soliciting plaintiff's clients.   Although
defendants may be voluntarily restricting their marketing practices for Esquire in the Portland
area, they have received no threats to their jobs with Esquire.   At this time, the hardships favor
plaintiff.

**4.      Public interest**

Plaintiff argues that the public interest in contracts and business development would be
furthered by this injunction.   This court disagrees.   The public interest would be disserved by the
enforcement of an unduly broad and statutorily voidable contract.   Although defendants may
have breached their Confidentiality Agreements or exceeded their authority in their use of
plaintiff's information, the only potentially confidential information held by defendants is the list
of reliable court reporters.   Because these court reporters are independent contractors, this court
believes that any injunction affecting the court reporters' ability to obtain work would not serve

12 -- ORDER

the public interest.  If this list is later deemed to be a trade secret, plaintiff's losses can be

ameliorated with monetary damages.

**<u>CONCLUSION</u>**

For the reasons provided, Plaintiff's Motion for Preliminary Injunction [4] is DENIED.

IT IS SO ORDERED.

DATED this <u>5th</u> day of December, 2011.


                    /s/ Ancer L. Haggerty        

                        Ancer L. Haggerty

                   United States District Judge